IN THE

# Supreme Court of the State of Georgia,

## AT MACON,

## JANUARY TERM, 1862.

PRESENT—JOSEPH H. LUMPKIN, ⎫
RICHARD F. LYON, ⎬ JUDGES.
CHARLES J. JENKINS, ⎭

ELIZABETH F. ATKINSON, by her next friend, HENRY R. THOMAS, plaintiff in error, vs. OTHO P. BEALL and ISAAC E. BOWER, defendants in error.

1. A purchased the land of B at sheriff's sale, under execution in favor of C. E, the wife of B, (defendant in execution,) filed her bill in Chancery for relief, and enjoining A from prosecuting his writ of possession, alleging a parol agreement, at the time of the marriage between her husband and herself, whereby the land in question, subsequently purchased from a third person, became her separate estate, (the title having been made to her directly, as though she were sole,) and also, alleging notice to the purchaser before the sale, of her equity. *Held*, that, to defeat the title of A, E must affect C with notice of such equity as would invalidate his lien upon the land. If the lien of the judgment creditor be superior to the wife's equity, so, likewise, is the purchaser's title.

In equity, from Randolph Superior Court. Motion to dissolve an injunction. Decided by Judge PERKINS, at Chambers, on the 1st day of October, 1860.

Elizabeth F. Atkinson, by her next friend, Henry R. Thomas, exhibited her bill in equity, in Randolph Superior Court, against Otho P. Beall and Isaac E. Bower, in which the following facts are alleged, to-wit:

In the year 1837 the complainant intermarried with Lazarus Atkinson. Before such intermarriage, she owned and held a promissory note on one James Smith for loaned money, amounting to $450 00, part of which she had received from the estate of her father, and the balance of which she had accumulated by her own industry—teaching school, etc. It was agreed, before the marriage, by complainant and her said husband, that said note and its proceeds should be and remain the sole and separate property of the complainant, and that said Smith should buy with the money a negro girl, and that the title should be vested in complainant for her sole and separate use. Soon after the marriage complainant traded the note to her father-in-law, James Atkinson, for a negro girl, with the understanding that she should take the girl on trial, and if the girl suited her the title should be made to complainant, and for her sole and separate use. The negro girl not suiting complainant she was returned, and James Atkinson remained her debtor for the amount of the note with the interest thereon. In the year 1840 complainant contracted with the defendant, Isaac E. Bower, for the purchase of "that part of lot of land, No. 75, in the sixth district of Randolph county, lying west of the Blakely road." Complainant was to pay $700 00 for the land out of her separate estate aforesaid, and it was distinctly understood and agreed, that Bower should execute to complainant a warranty deed conveying said land to her for her sole and separate use, free from the debts or contracts of her then, or any future husband. For the purpose of arranging to pay for the land, a portion of it was sold to one Zadock Hood, who paid for it and received a deed from Bower. Out of the proceeds of her separate estate aforesaid, the complainant paid for the balance of the land and received from Bower a deed therefor, describing the land as follows: "part of lot No. 75 in the

sixth district of Randolph county, bounded on the north by the original line of said lot, commencing at the north-west corner of said lot and running east to the road leading from Cuthbert to Blakely, thence along the west side of said road to land this day conveyed by me to Zadock Hood, thence along Hood's line to the western line of said lot, thence along said western line to the corner first aforesaid." The complainant being ignorant of law, and confiding in the honesty, integrity and ability of Bower, he being an attorney-at-law, accepted the deed, believing that it was a warranty deed, and secured the land to her sole and separate use, when in fact it was only a warranty against the claims of the said Bower, his heirs or those claiming by or through them, and was an absolute deed to complainant, and not to her separate use. Under the belief that the deed was made in accordance with the original understanding aforesaid, complainant, with her own means, erected a dwelling house and made other valuable improvements on the land, feeling secure in a home for herself and children. A *fi. fa.* issued from Randolph Superior Court, in favor of Furlow, Price & Co. vs. E. M. Black, maker, and Lazarus Atkinson endorser, was levied on " house and lot in Cuthbert, containing ten acres, more or less, whereon Lazarus Atkinson now lives," as the property of said endorser. Lazarus Atkinson owned ten acres of land on lot Number 76, adjoining the land of complainant aforesaid, which most persons would suppose was the land advertised for sale under said levy, as the land of complainant contained forty or fifty acres. The sheriff did not call on Lazarus Atkinson to point out property to be levied on under said *fi. fa.*, for if he had said Atkinson would, or should, have pointed out either the ten acres on Number 76 aforesaid, or the land for which the claim was given, upon which the judgment and *fi. fa.* was founded, said Atkinson being only the endorser and said land being bound for said debt. When said land was brought to sale on the 6th of November, 1860, Otho P. Beall became the purchaser at the price of $120 00, whilst the land claimed by complainant is worth about $1,000 00. Beall had full notice of all the facts aforesaid at the time he bought the

land at sheriff's sale, and has taken a deed from the sheriff, and threatens to dispossess complainant of her dwelling house and ten acres of her land under the purchase aforesaid. Neither the levy nor the sheriff's deed gives any description of the land sold, other than before stated in the levy. The indefiniteness of the levy, the uncertainty as to what land was being sold, as well as a doubt as to the title, enabled Beall to buy land worth $1,000 00 for $120 00.

The bill prays, that Beall may be enjoined from dispossessing the complainant, and that the deed from Bower may be so reformed as to vest the title to the land in complainant, according to the contract and understanding of the parties.

Beall filed his answer to the bill in which he alleges a want of knowledge as to most of the facts charged in the bill, but admits that complainant once proposed to sell the land to him, or a portion of it, and that he agreed to, and was about to buy two acres of it from her, but that on looking to the deed he was satisfied that the language of the deed did not convey to complainant a separate estate in the land, and he therefore declined to buy. He also admits that complainant, in 1858 or 1859, pending the negotiation for the purchase of said two acres, told him that the land was her separate property. Beall denies any other notice of the facts charged in the bill.

Upon the coming in of this answer a motion was made to dissolve the injunction, which had been previously granted, on the ground that the equity of the bill was fully abrogated by the answer.

After argument had on this motion, the presiding Judge sustained the same and dissolved the injunction.

This decision is the error complained of.

KIDDO & SON, by STROZIER, for plaintiff in error.

ARTHUR HOOD, *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

It is manifest that the complainant has no legal estate in the premises, the subject of litigation. The conveyance was directly to herself, she being at the time a *feme covert*, and there is nothing in the deed indicating an intention to create a separate estate in her. Nor is there any evidence that at the time of this conveyance her husband assented to it. The consequence is, that upon the conveyance to her, the marital rights of the husband attached to the premises, and immediately, thereupon, the joint possession of the husband and wife supervened. But, in legal contemplation, the fact patent to the world was *his* possession. The equity relied upon by her to defeat the title of the defendant, Beall, derived under a sheriff's sale, to satisfy a judgment against the husband, is a parol agreement between herself and husband, contemporaneous with the marriage, touching a chose in action, then and previously possessed by her, the fruit of which was the consideration paid for the land in dispute, and a notice given by her to Beall, before the sheriff's sale, " that she had a separate estate in the land."

It may be conceded, for the argument, that the facts disclosed in the bill establish an equity in the wife available against the husband, or any one acquiring title directly from him, with full knowledge of those facts. But Beall did not purchase directly from him, nor does it appear that he had full knowledge of the facts. Her statement to him that she had a separate estate in the land was but an assertion of a right, and it was positively weakened by the only fact which she brought to his knowledge, viz: the conveyance to herself, which she deemed sufficient. That, unqualified by the assent of the husband, or the antecedent circumstances, would have been unavailable even against him. How, then, could that conveyance, *per se*, affect Beall?

But would Beall's title have been affected by full notice of all the facts alleged in the bill? In Shepherd *vs.* Burkhalter, 13 Ga., 443, and Smith *vs.* Jordan, 25 Ga., 687, it was held that the lien of a mortgage, not legally recorded,

was invalid against a purchaser at sheriff's sale under a judgment younger than the mortgage, even though the purchaser had prior notice of the mortgage. The principle upon which those cases rest is this: the junior judgment creditors, for whose benefit the sales were made, had a lien superior to that of the mortgages, (by reason of the failure to record the mortgages,) but this advantage would avail them nought unless the purchasers under their judgments took title paramount to the mortgage liens. For the benefit, therefore, of the judgment creditors, purchasers at sheriff's sales are subrogated to all the rights and advantages enjoyed by the former, notwithstanding personal notice to the latter. Now these were cases of conflicting legal liens, but we think the principle applies with equal, if not with greater force to a conflict between a legal lien and a mere outstanding equity. These adjudications are not only binding upon us in cases to which they apply, but they meet our entire approval. It results, then, that the complainant, in order to make her equity available against the purchaser at sheriff's sale, should have affected the judgment creditors, for whose benefit the sale was made, with notice of it. This is not attempted, and therefore the injunction which had been granted in aid of her equity was properly dissolved upon motion.

I put out of view the allegations of error in the sheriff's levy and advertisement, *quoad* the description of the property. If there be fatal error in these, it is available at law to any litigant against whom the defendant in error may set up title. It has no connection with the peculiar equity of the plaintiff in error, and cannot be invoked to strengthen it.

Let the judgment be affirmed.